# IN THE COURT OF APPEALS OF IOWA

No. 18-1552
Filed January 9, 2019

**IN THE INTEREST OF D.H.,**
**Minor Child,**

**R.D., Mother,**
Appellant.

_____

Appeal from the Iowa District Court for Wapello County, William Owens, Associate Juvenile Judge.

A mother appeals from an order terminating her parental rights in her child pursuant to Iowa Code chapter 232 (2018). **AFFIRMED.**

Robert F. Bozwell, Jr., Centerville, for appellant mother.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Sarah L. Wenke, Ottumwa, guardian ad litem for minor child.

Considered by Vogel, P.J., and Vaitheswaran and McDonald, JJ.

**McDONALD, Judge.**

The juvenile court terminated Rachell's rights in her child, D.H., pursuant to Iowa Code section 232.116(1)(f) (2018). In this appeal, Rachell claims there is insufficient evidence supporting the statutory ground authorizing the termination of her parental rights and termination of her parental rights is not in the best interest of the child.

We review termination-of-parental-rights proceedings de novo. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014); *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). However, "[w]e give weight to the findings of the juvenile court, particularly with respect to the credibility of witnesses." *In re B.N.*, No. 00-0220, 2001 WL 57987, at *1 (Iowa Ct. App. Jan 24, 2001); *accord D.W.*, 791 N.W.2d at 706. The statutory framework authorizing the termination of a parent-child relationship is well established. *See In re A.S.*, 906 N.W.2d 467, 472-73 (Iowa 2018) (setting forth the statutory framework). The burden is on the State to prove by clear and convincing evidence (1) the statutory ground or grounds authorizing the termination of parental rights and (2) "termination of parental rights is in the best interest[] of the child[]." *See In re E.H.*, No. 17-0615, 2017 WL 2684420, at *1 (Iowa Ct. App. June 21, 2017).

We first address Rachell's challenge to the sufficiency of the evidence. The juvenile court terminated Rachell's parental rights pursuant to Iowa Code section 232.116(1)(f). Under that section, as relevant here, the State was required to prove by "clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102." Iowa Code § 232.116(1)(f)(4). "At the present time" means at the time of the

termination hearing. *See A.M.*, 843 N.W.2d at 111. We have interpreted this statutory provision to mean the State is required to prove the child cannot be returned to the parent without creating "an appreciable risk of adjudicatory harm" to the child. *See E.H.*, 2017 WL 2684420, at *1.

The record supports the termination of Rachell's parental rights. Rachell cannot meet the basic needs of the child. Rachell does not have stable housing. She has lived in eight different locations over the last two years. During the pendency of this case, she has lived in a homeless shelter for a period of time and in her truck. At the time of the termination hearing, Rachell lived with a friend and his mother. She had lived there only for one month, and she admitted the housing is likely temporary. She has not discussed with her friend whether he and his mother would allow D.H. to live in the house. The house has only two bedrooms, both of which are occupied. Rachell's unstable housing militates in favor of termination. *See In re K.H.*, No. 16-0113, 2016 WL 1703095, at *2 (Iowa Ct. App. Apr. 27, 2016) (affirming termination where "the father was unable [to] maintain safe and stable housing"); *In re J.T.*, No. 14-0967, 2014 WL 4635527, at *2 (Iowa Ct. App. Sept. 17, 2014) (affirming termination where "[a]t the time of the termination hearing, the mother did not have stable housing"); *In re C.N.G.*, No. 03-1717, 2003 WL 22900901, at *3 (Iowa Ct. App. Dec. 10, 2003) (finding "the parents' continued inability to find suitable, safe housing" created risk for the child); *In re K.H.*, No. 03-0671, 2003 WL 21459582, at *2 (Iowa Ct. App. June 25, 2003) ("[P]lacing K.H. with [the father] would result in an ongoing risk of harm to K.H. because of [the father's] lack of stable . . . housing.").

Rachell also has a number of health conditions, including traumatic brain injury, post-traumatic stress disorder, panic disorder, agoraphobia, depression, bipolar disorder, borderline personality disorder, and anxiety. Rachell testified that her conditions prevent her from doing everyday tasks, like maintaining employment. The incident giving rise to D.H.'s removal is probative of how Rachell's mental health negatively affects her ability to parent. At the time of removal, Rachell was living with her boyfriend, Lee. Lee and Rachell got into an argument. In response, Rachell fled into a cornfield with a pair of scissors and threatened to harm herself. Lee was left to care for D.H. He was unable to locate Rachell and contacted the Iowa Department of Human Services ("IDHS").

We recognize "mental disability of a parent is not a sufficient reason alone for the termination of parental rights." *In re A.M.S.*, 419 N.W.2d 723, 733 (Iowa 1988); *accord In re K.F.*, 437 N.W.2d 559, 560 (Iowa 1989). However, a parent's mental health is a factor that should be considered when evaluating that parent's ability to care for his or her child. *See A.M.S.*, 419 N.W.2d at 733-34. Here, despite having a slew of mental-health conditions for over a decade, Rachell failed to meaningfully address the conditions during the pendency of the case. She admitted her conditions impair her ability to provide adequate care for the child. Rachell's failure to seek treatment for her mental-health conditions supports termination of her parental rights. *See In re A.Z.*, No. 18-1420, 2018 WL 4909831, at *2 (Iowa Ct. App. Oct. 10, 2018) (affirming termination when the mother "was diagnosed with bipolar disorder, major depressive disorder, and anxiety disorder among other things, but she did not engage in mental-health treatment"); *In re A.S.*, No. 17-1810, 2018 WL 542646, at *1 (Iowa Ct. App. Jan. 24, 2018) ("Both parents

have significant untreated mental-health conditions, which has also prevented them from providing appropriate care for the child."); *In re T.H.*, No. 17-1558, 2017 WL 6520731, at *2 (Iowa Ct. App. Dec. 20, 2017) (terminating parental rights when mother "did not address her mental-health conditions"); *In re S.C.*, No. 15-0262, 2015 WL 2089743, at *3 (Iowa Ct. App. May 6, 2015) ("We . . . conclude that Kristin's untreated mental health conditions create a risk of harm to the child and support the termination of her rights.").

Rachell's history of substance abuse, including the use of methamphetamine and marijuana, supports the termination of her parental rights in D.H. Rachell underwent a substance-abuse evaluation in May 2017. However, she failed to maintain contact with her substance-abuse counselor and was discharged from treatment. Rachell has not sought treatment since that time. She admitted to using methamphetamine as recently as June 2018. She admitted to "falsely passing" drug tests. Untreated substance-abuse disorders create a risk of harm for the child and support termination of parental rights. *See A.Z.*, 2018 WL 4909831, at *1-2 (finding unsuccessful treatment of substance abuse militates in favor of termination); *A.S.*, 2018 WL 542646, at *1 (collecting cases); *In re M.A.*, No. 07-0907, 2007 WL 2119246, at *2 (Iowa Ct. App. July 25, 2007) (affirming termination when "[a]t the time of the termination of parental rights hearing [the mother] had unresolved substance abuse issues").

In sum, the State proved by clear and convincing evidence the statutory ground authorizing the termination of Rachell's parental rights. Rachell does not contest the sufficiency of the evidence supporting the first three elements pursuant to section 232.116(1)(f). With respect to the final element, there is clear and

convincing evidence the child could not be returned to the mother's custody at the time of the termination hearing without being exposed to an appreciable risk of adjudicatory harm.

Rachell contends the juvenile court should have given her additional time to show she could provide adequate care for D.H. The juvenile court may defer termination for six months if the court "determin[es] that the need for removal of the child from the child's home will no longer exist at the end of [an] additional six-month period." Iowa Code § 232.104(2)(b); *accord In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005). In support of her request for additional time, Rachell notes she had housing at the time of the termination hearing. She also notes having stable housing will allow her to attend mental-health and substance-abuse treatment.

Rachell's contention that she had housing at the time of the termination hearing is not supported by the evidence. By her own admission, her living arrangements are temporary. She has not inquired of the owner whether D.H. would be allowed to live there. Rachell remains unemployed and unable to obtain her own housing going forward. *See In re N.A.S.*, No. 13-0074, 2013 WL 988895, at *2 (Iowa Ct. Ap. Mar. 13, 2013) (affirming termination when "the father was unemployed and lacked stable housing"); *In re J.W.*, 528 N.W.2d 657, 662 (Iowa 1995) (finding mother's unemployment supported termination of parental rights).

Further, Rachell's "past performance is indicative of the quality of care [s]he is capable of providing in the future." *N.A.S.*, 2013 WL 988895, at *2; *accord In re C.W.*, 554 N.W.2d 279, 283 (Iowa Ct. App. 1996). "A parent cannot wait until the eve of termination . . . to begin to express an interest in parenting." *In re C.B.*, 611

N.W.2d 489, 495 (Iowa 2000). Here, IDHS became involved with this family in 2014 due to Rachell's substance abuse, but the case was closed on the understanding D.H. would move out of Iowa to live with his grandmother. That did not happen, and the family again came to the attention of the department in 2016. In the last four years, Rachell failed to meaningfully address and resolve the conditions giving rise to the State's intervention in the family. She only undertook some effort at the end of the case, which is not enough. We affirm the juvenile court's determination that D.H. could not be returned to Rachell within an additional six months.

We next address Rachell's argument that termination of her parental rights is not in the best interest of the child. In determining the best interest of the child, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). "In determining the best interests of a child, the court looks to the child's long-range and immediate interests." *In re C.D.*, No. 01-0472, 2001 WL 1205364, at *2 (Iowa Ct. App. Oct. 12, 2001); *accord In re J.M.*, No. 16-0276, 2016 WL 2744793, at *1 (Iowa Ct. App. May 11, 2016).

Rachell argues that D.H. has a close bond with her and that it is not in the child's best interest to sever that bond. There is little dispute Rachell has a close bond with D.H. However, there is also little dispute that Rachell is unable to provide adequate care for D.H. at this time. Rachell has not had a stable home in over two years. She has a number of untreated mental-health conditions. These mental-health conditions pose a risk of harm to the child. Rachell has untreated

substance-abuse conditions. Rachell's cluster of conditions prevents her from meeting the child's physical, mental, and emotional needs. This is particularly true here because D.H. also has mental-health conditions that require heightened attention. *Cf. In re K.M.*, No. 17-0498, 2017 WL 2461905, at *3 (Iowa Ct. App. June 7, 2017) (considering mother's inability to address children's medical needs as a factor weighing in favor of termination). It is not in D.H.'s best interests to return to Rachell's care. *See In re A.G.*, No. 18-1161, 2018 WL 6131920, at *3 (Iowa Ct. App. Nov. 21, 2018) (finding termination was in the child's best interest when the father "refused to acknowledge or address the concerns giving rise to removal of the child").

For these reasons, we affirm the judgment of the juvenile court.

**AFFIRMED.**